1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    DANI BELINDA FISCHER,                    No.  2:14-cv-00918-MCE-AC

12                 Plaintiff,

13         v.                                  **MEMORANDUM AND ORDER**

14    RENT-A-CENTER, INC.,

15                 Defendant.

16

17         On April 15, 2014, Plaintiff Dani Belinda Fischer ("Plaintiff") filed the instant action

18    against Defendant Rent-A-Center, Inc. ("Defendant"), alleging claims under the

19    Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, ("RFDCPA") and

20    the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  See Compl., ECF

21    No. 1.  On May 14, 2014, Defendant filed a motion to compel arbitration and to stay this

22    action in the interim.  Mot., ECF No. 5.  In the alternative, Defendant moved to dismiss

23    Plaintiff's Complaint.  Id. Plaintiff timely opposed Defendant's Motion.  Opp'n, ECF No. 9.

24    For the following reasons, Defendant's motion to compel arbitration is GRANTED and

25    this litigation is STAYED pending that arbitration.  Defendant's motion to dismiss is

26    DENIED as moot.[1]

27    _____

28         [1] Because oral argument would not be of material assistance, the Court ordered this matter
      submitted on the briefs.  E.D. Cal. Local R. 230(g).  See ECF No. 12.

1

1

# BACKGROUND[2]

2

3          Defendant rents name-brand furniture, electronics, appliances and computers to

4    consumers.  On July 15, 2012, Plaintiff entered into a Consumer Lease Agreement with

5    Plaintiff whereby Defendant agreed to lease living room furniture to Plaintiff in exchange

6    for a lease payment of $172.86 per month.  The Consumer Lease Agreement, in

7    relevant part, states: "This lease requires you to sign a separate arbitration agreement.

8    You should read the arbitration agreement before signing this lease."  Exhibit A, ECF

9    No. 5 at 13 (emphasis removed).  The Arbitration Agreement, in relevant part, states:

10           You and Rent-A-Center hereby agree to enter into this
11           Arbitration Agreement ("Agreement"). . . . The Federal
             Arbitration Act (9. U.S.C. § 1 et seq.) shall govern this
12           Agreement, which evidences a transaction involving
             interstate commerce.

13           You and RAC hereby agree that any and all "Claims" as
             defined below (unless specifically excluded . . .) that arise
14           under, arise out of, or relate in any way to any Consumer
             Lease or Rental-Purchase Agreement and/or any and all
15           services rendered under any Consumer Lease Rental-
             Purchase Agreement, entered into between you and RAC, at
16           any time, shall only be resolved by binding arbitration in
             accordance with the terms and procedures set forth in this
17           Arbitration Agreement.

18           . . .

19           (B) What Claims Are Covered: "Claim shall be interpreted as
             broadly as the law allows and means any dispute or
20           controversy between you and RAC, its officers, directors,
             employees, or agents, its parent company, subsidiary,
21           affiliate entities, and assigns of any of them, based on any
             legal theory, including but not limited to allegations based on
22           negligence, breach of contract, tort, fraud, misrepresentation,
             trespass, the common law, or any statute, regulation or
23           ordinance.

24   Exhibit A, ECF No. 5 at 14.

25   ///

26   ///

27   _____

28        [2] Unless otherwise indicated, these facts are taken, largely verbatim, from Plaintiff's Complaint, ECF No. 1, and Defendant's Motion to Compel, ECF No. 5.

1  On or about July 2013, Plaintiff's account became past due after she failed to

2  make timely payments as set forth in the Agreement.  Defendant contends that it

3  attempted to contact Plaintiff to discuss payments on the account.

4  Plaintiff alleges that Defendant's communications here were excessive,

5  sometimes occurring multiples times in a single day and amounting to harassment under

6  the circumstances.  Through this action, Plaintiff seeks an injunction prohibiting

7  Defendant from contacting Plaintiff on Plaintiff's cellular telephone using an automated

8  dialing system, as well as monetary damages.

9  Defendant's motion to compel arbitration and to stay this action pending

10  arbitration is currently pending before the Court.  Plaintiff "does not dispute the specific

11  terms of the arbitration agreement."  Opp'n, EF No. 9 at 3 n.1.  Instead, Plaintiff disputes

12  the applicability of the arbitration agreement to her claims.  Specifically, Plaintiff opposes

13  Defendant's motion on three grounds: (1) Defendant's motion to compel arbitration must

14  be denied, unless and until Defendant can establish that the repeated calls it placed to

15  Plaintiff's cellular telephone were arising out of or related in any way to Plaintiff's

16  consumer loan; (2) Plaintiff's TCPA claim does not fall within the substantive scope of

17  the purported arbitration agreement; and (3) Plaintiff's RFDCPA claim specifically

18  prohibits Plaintiff's waiver of rights to a jury trial.  See id. at 2-3, 6-16.

19

20  **ANALYSIS**

21

22  "The [Federal Arbitration Act ("FAA")] was enacted in 1925 in response to

23  widespread judicial hostility to arbitration agreements."  AT&T Mobility LLC v.

24  Concepcion, 131 S. Ct. 1740, 1745 (2011).  Under the FAA, arbitration agreements

25  "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or

26  in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 of the FAA

27  "reflect[s] . . . a 'liberal federal policy favoring arbitration."  Concepcion, 131 S. Ct. at

28  1745 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24

1    (1983)).  At the same time, however, § 2 reflects "the 'fundamental principle that

2    arbitration is a matter of contract.'"  Id. (quoting Rent-A-Center, W., Inc. v. Jackson,

3    130 S. Ct. 2772, 2776 (2010)).  "[Section] 3 requires courts to stay litigation of arbitral

4    claims pending arbitration of those claims, in accordance with the terms of the

5    agreement; and § 4 requires courts to compel arbitration 'in accordance with the terms of

6    the agreement' upon the motion of either party to the agreement . . . ."  Id. at 1748.

7         Thus, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a

8    district court, but instead mandates that district courts shall direct the parties to proceed

9    to arbitration on issues as to which an arbitration agreement has been signed."  Dean

10   Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4)

11   (emphasis in original).  "The standard for demonstrating arbitrability is not a high one; in

12   fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is

13   phrased in mandatory terms."  Republic of Nicaragua v. Standard Fruit Co., 937 F.2d

14   469, 475 (9th Cir. 1991).  "Moreover, the scope of an arbitration clause must be

15   interpreted liberally and 'as a matter of federal law, any doubts concerning the scope of

16   arbitrable disputes should be resolved in favor of arbitration.'"  Concat LP v. Unilever,

17   PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting Moses H. Cone, 460 U.S. at

18   24; Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1144 (9th Cir.

19   1991); French v. Merrill Lynch, 784 F.2d 902, 908 (9th Cir. 1986)).

20        Thus, "[a]n order to arbitrate . . . should not be denied unless it may be said with

21   positive assurance that the arbitration clause is not susceptible of an interpretation that

22   covers the asserted dispute.  Doubts should be resolved in favor of coverage."  United

23   Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

24        In determining whether to compel arbitration, the Court may not review the merits

25   of the dispute.  Instead, the Court must limit its inquiry to three steps: (1) whether the

26   contract containing the arbitration agreement evidences a transaction involving interstate

27   commerce; (2) whether there exists a valid agreement to arbitrate; and (3) whether the

28   ///

4

1  dispute(s) fall within the scope of the agreement to arbitrate.  Standard Fruit, 937 F.2d at

2  476-78.

3     **A.     Transaction Involving Interstate Commerce**

4        The FAA provides that "[a] written provision in any . . . contract evidencing a

5  transaction involving commerce to settle by arbitration a controversy thereafter arising

6  out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ."

7  9 U.S.C. § 2.  Section 1 defines "commerce" to mean, among other things, "commerce

8  among the several States or with foreign nations . . . ."  Id. § 1.  "The 'interstate

9  commerce' provision has been interpreted broadly, embracing any agreement that in its

10  operation directly or indirectly affects commerce between states in any fashion."

11  Affholter v. Franklin Cnty. Water Dist., 1:07-cv-0388-OWW-DLB, 2008 WL 5385810,

12  at *2 (E.D. Cal. Dec. 23, 2008) (citing Allied-Bruce Terminix Cos., Inc. v. Dobson,

13  513 U.S. 265, 277-282 (1995)).

14        In this case, the parties do not dispute that the Consumer Lease Agreement

15  evidences a transaction involving interstate commerce.  Indeed, the contract between

16  the parties is a contract to lease living room furniture between citizens of different

17  states—California and Delaware.  See Compl., ECF No. 1 at 2; see also ECF No. 5 at

18  14, 16.  Accordingly, the transaction "involve[es] interstate commerce."  See Ackerberg

19  v. Citicorp USA, Inc., 898 F. Supp. 2d 1172, 1175, 1177 (N.D. Cal. 2012) (compelling

20  arbitration under the FAA based on arbitration clause contained in credit card agreement

21  between citizens of different states); see generally Allied-Bruce Terminix Cos., 513 U.S.

22  at 274-75 (interstate-commerce requirement should be construed broadly to include all

23  activities that merely affect interstate commerce).

24     **B.     Existence of a Valid Agreement to Arbitrate**

25        The Court's second task is to determine whether there exists a valid agreement to

26  arbitrate.  Standard Fruit, 937 F.2d at 476-78; see also Sanford v. MemberWorks, Inc.,

27  483 F.3d 956, 962 (9th Cir. 2007).  While the FAA expresses a strong public policy in

28  favor of enforcing arbitration agreements, the Court must first establish that there is an

1    agreement to be enforced.  Baker v. Osborne Dev. Corp., 159 Cal. App. 4th 884, 892

2    (2008).  "[T]he question of whether a party is bound by an agreement containing an

3    arbitration provision is a 'threshold question' for the court to decide."  Microchip Tech.

4    Inc. v. U.S. Philips Corp., 367 F.3d 1350, 1357 (Fed. Cir. 2004) (citing John Wiley &

5    Sons, Inc. v. Livingston, 376 U.S. 543 (1964)) (applying Ninth Circuit law).  In

6    determining whether an agreement to arbitrate exists, the district court "appl[ies] general

7    state-law principles of contract interpretation, while giving due regard to the federal

8    policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in

9    favor of arbitration."  Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir.

10   1996); see also Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010).

11         Here, however, the Consumer Arbitration Agreement contains language providing

12   that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have

13   exclusive authority to resolve any dispute relating to the interpretation, applicability,

14   enforceability, or formation of this Agreement. . . ."  ECF No. 5 at 15.  This language is a

15   "delegation provision"—"an agreement to arbitrate threshold issues concerning the

16   arbitration agreement."  Rent-A-Center, W., Inc., 130 S. Ct. at 2777.  The Supreme Court

17   has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,'

18   such as whether the parties have agreed to arbitrate or whether their agreement covers

19   a particular controversy."  Id. (citing Howsam, 537 U.S. at 83-85; Green Tree Fin. Corp.

20   v. Bazzle, 539 U.S. 444, 452 (2002) (plurality opinion)).  "This line of cases merely

21   reflects the principle that arbitration is a matter of contract."  Id. (citing First Options of

22   Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)).  "An agreement to arbitrate a gateway

23   issue is simply an additional, antecedent agreement the party seeking arbitration asks

24   the federal court to enforce, and the FAA operates on this additional arbitration

25   agreement just as it does on any other."  Id.  In Rent-A-Center, the Supreme Court found

26   that a delegation provision "is valid under § 2 'save upon such grounds as exist at law or

27   in equity for the revocation of any contract,' and federal courts can enforce the

28   ///

6

1  agreement by staying federal litigation under § 3 and compelling arbitration under § 4."

2  Id. at 2778.

3      Plaintiff does not contest the validity of the delegation provision nor does she

4  dispute the specific terms of the arbitration agreement.  See, e.g., Opp'n, ECF No. 9 at

5  3.[3]  Thus, the preliminary question of whether there exists a valid agreement to arbitrate

6  is a gateway issue for the arbitrator(s), and not the Court, to decide.

7      **C.    Disputes Fall Within the Scope of the Agreement to Arbitrate**

8      "In considering the scope of an arbitration clause's application, U.S. courts have

9  recognized a distinction between 'broad' and 'narrow' language."  Concat LP, 350 F.

10  Supp. 2d at 807 (quoting Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d

11  1458, 1463-64 (9th Cir. 1983)).  The rule is that, where an arbitration clause applies to

12  matters "arising under" the agreement, its scope is narrowly defined, but where it applies

13  to matters "arising out of or relating to" the agreement, its application should be broadly

14  construed.  Id.  "[W]hen an arbitration clause refers to disputes or controversies 'under'

15  or 'arising out of' the contract, arbitration is restricted to 'disputes and controversies

16  relating to the interpretation of the contract and matters of performance.'"  Mediterranean

17  Enterprises, Inc., 708 F.2d at 1465.

18      Plaintiff opposes Defendant's Motion on the grounds that Defendant has not

19  established that its repeated calls to Plaintiff were in any way related to the loan

20  agreement and that the purported arbitration agreement does not encompass Plaintiff's

21  tort-based TCPA claims for harassing telephone calls that were unrelated to the loan

22  agreement.  See generally Opp'n, ECF No. 9.  Specifically, Plaintiff argues that

23  "Defendant has not established that the reason it contacted Plaintiff was in any way

24  related to the loan agreement.  Defendant does not allege any reason for why it

---

25      [3] Although Plaintiff refers to the arbitration agreement as the "purported arbitration agreement,"
26  she does not attack its validity or enforceability, only its applicability to her claims.  See, e.g., Opp'n, ECF
   No. 9 at 6 ("Plaintiff does not dispute that Plaintiff obtained a consumer loan with Defendant. Plaintiff does
   not dispute that the consumer loan was subject to an arbitration agreement, in which Plaintiff agreed that
27  any and all claims, controversies, or disputes arising out of or related in any way to the loan agreement
   would be arbitrated. However, Defendant has not established that the reason it contacted Plaintiff was in
28  any way related to the loan agreement.").

1  contacted Plaintiff.  Without any explanation or evidentiary support, Defendant concludes

2  that Plaintiff's claims are plainly within the scope of the arbitration agreement and that all

3  Plaintiff's claims are arbitrable."  Id. at 6.  Plaintiff states that "there are any number of

4  reasons why Defendant would have been contacting Plaintiff that had nothing to do with

5  the consumer loan agreement" and therefore claims that "evidentiary discovery is

6  necessary to determine the scope and purpose for Defendant['s] repeated telephone

7  calls."  Id.  Plaintiff's objections fail for two reasons.

8        First, and most importantly, given that the delegation provision, supra, applies to

9  questions regarding the "applicability" of the arbitration clause, the issue of whether the

10  disputes fall within the scope of the agreement to arbitrate is also a gateway issue that

11  the arbitrator(s), rather than the Court, must decide.

12        Second, even if the parties' agreement did not contain a delegation provision,

13  Plaintiff is incorrect in her assertion that Defendant submitted no evidence establishing

14  that "its purpose for constantly and continuously calling Plaintiff despite Plaintiff's

15  repeated requests to stop were in some way arising out of or related in any way to the

16  loan agreement."  Opp'n, ECF No. 9 at 7.  Defendant submitted an affidavit which states

17  that "[Defendant] attempted to contact Plaintiff to discuss payments on the account."

18  ECF No. 5 at 10.  However, the Court need not even look to Defendant's moving papers

19  and affidavit to reject Plaintiff's argument–Plaintiff's own Complaint contradicts her

20  assertion.  See, e.g., Compl., ECF No 1 at 3 ¶ 9 ("Within one year prior to the filing of

21  this action, Defendant contacted Plaintiff to collect money . . . due or owing or alleged to

22  be due or owing from a natural person by reason of a consumer credit transaction, which

23  qualifies as 'consumer debt'") (emphasis added); Id. at 5 ¶ 23 ("The natural and probable

24  consequences of Defendant's conduct was to harass, oppress or abuse Plaintiff in

25  connection with the collection of the alleged debt") (emphasis added).  Therefore, even if

26  Plaintiff contested the delegation provision, and she does not, Plaintiff's argument fails.

27  See, e.g., Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013)

28  (calls made to plaintiffs "because Plaintiffs had failed to make timely payments on their

1  accounts," "for the limited purpose of collecting money owed them," and "not ... for

2  advertising, marketing, or other purposes unrelated to the accounts," were " 'related to'

3  the delinquent credit accounts" and thus TCPA claims based on those calls were

4  covered by Citi arbitration clause).

5        In accordance with the parties' contract, the Court must stay the litigation to

6  permit the arbitrator(s) first to arbitrate these "gateway" issues, and then, if permissible,

7  to arbitrate the substantive claims.

8        **D.    RFDCPA  and the Right to a Jury Trial**

9        Finally, Plaintiff argues that her RFDCPA claim specifically prohibits Plaintiff's

10  waiver of rights to a jury trial.  Plaintiff relies on Section 1788.33 which states that "[a]ny

11  waiver of the provisions of this title is contrary to public policy, and is void and

12  unenforceable."  Cal. Civ. Code § 1788.33.  Defendant disagrees with Plaintiff's

13  interpretation of the RFDCPA.  Reply, ECF No. 11 at 8-9.  "The Court, however, does

14  not need to resolve this issue because even if Plaintiff's interpretation is correct, the FAA

15  preempts state law."  Delgado v. Progress Fin. Co., 1:14-CV-00033-LJO, 2014 WL

16  1756282, at *6 (E.D. Cal. May 1, 2014);  see AT&T Mobility LLC, 131 S. Ct. at 1747,

17  (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the

18  analysis is straightforward: The conflicting rule is displaced by the FAA.");  see also

19  Allied–Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 281 (1995) ("What

20  States may not do is decide that a contract is fair enough to enforce all its basic terms

21  (price, service, credit), but not fair enough to enforce its arbitration clause.").

22  Accordingly, the Court orders the parties to arbitrate Plaintiff's RFDCPA claim.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**CONCLUSION**

As set forth above,

1. Defendant's Motion to Compel Arbitration and Stay the Case, ECF No. 5, is GRANTED;

2. The litigation is STAYED in its entirety pending completion of the arbitration; and

3. Plaintiff and Defendant are ORDERED to submit a joint status report within sixty (60) days of the date this order is electronically filed, and additional joint status reports each sixty (60) days thereafter. Failure to do so may be grounds for sanctions and may result in the dismissal of this action with prejudice without further notice.

IT IS SO ORDERED.

Dated: July 22, 2014

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT